| United States District Court | Southern District of Texas |
|---|---|

Bart Thomas Moore,  §
TDCJ 468637,  §
 §
      Plaintiff,  §
 §
versus  §  Civil Action H-08-1235
 §
Anthony Collins, et al.,  §
 §
      Defendants.  §

# Opinion on Dismissal

Bart Thomas Moore is a Texas prisoner. He sues prison employees Anthony Collins, Vonda Rafter, Lt. Rivers, Marcus Spivey, Ms. Rivas, Doug Waldron, Mona Cartwright-Biggs (Cartwright), Director Brad Livingston, James Jones, and Assistant Warden Joe Moya for civil rights violations. 42 U.S.C. § 1983. Moore is proceeding as a pauper. 28 U.S.C. § 1915. The court held a hearing to allow Moore to explain his claims. *See Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

1. *Claims*

Moore claims civil rights violations including harassment, slander, discrimination, retaliation, and denial of access to the courts. The claims Moore raises in his amended complaint (13) and affirms at the *Spears* hearing (24) follow. Cartwright and other prison employees conspired to violate Moore's rights by subjecting him to racial discrimination, slander, harassment, intimidation, retaliation, abuse of authority, falsification of government documents, and a denial of access to the courts. These actions caused him severe stress and anxiety. The officers knew Moore suffered from stress, chronic heart disease, and head, chest, and stomach pains. These problems were made worse by officers' threats and racial epithets, retaliation, and other harassment.

At every opportunity, Cartwright harassed and retaliated against Moore while he was on the Terrell Unit. Cartwright wrote false disciplinary reports against Moore to retaliate against him for filing grievances against her and for seeking redress to the courts. She daily threatened Moore.

In his definite statement (16), Moore elaborates and adds the following claims. The Terrell Unit administrators did not hold the officers responsible for their actions against Moore. In their responses to Moore's grievances, they said no action was needed. Each time Moore filed a

grievance, unit officials promptly retaliated against him and harassed him. Warden Collins refused to process the grievances, condoned illegal actions, and failed to hold officers accountable. Capt. Rafter did not help Moore solve any of these problems, condoned and participated in the illegal smuggling of drugs into the unit, and allowed Cartwright to retaliate against Moore. Sgt. Spivey continued to smuggle drugs into the Terrell Unit and retaliate against Moore "through grievances."

Waldron condoned other officers' racial discrimination, racial slandering, retaliation, harassment, and their conspiracy to falsify disciplinary reports against Moore. Waldron allowed guards to file false disciplinary reports against Moore in retaliation for him seeking redress against Cartwright. Waldron condoned every illegal act by the other prison employees.

On January 11, February 5, and February 13, 2008, Cartwright retaliated against Moore for filing a grievance against her. During April of 2008, Cartwright continuously harassed, agitated, and retaliated against Moore by threatening him with further shakedowns, property confiscations, and false disciplinary charges. She did this to cause Moore stress, anxiety, and high blood pressure. This resulted in severe headaches, chest pains, and shortness of breath.

Cartwright called Moore "white trailer park trash." She told other prisoners and officers that because of Moore's actions, including filing grievances and law suits against her, that Moore would suffer consequences, including bodily injury.

Collins, Rafter, and others were removed from the Terrell Unit in early 2008 based on an investigation by Channel 2 in Houston. Moore says he has evidence that Cartwright continued to smuggle in contraband to prison gangs after the investigation. Spivey also has smuggled items to gang members.

On May 26, 2008, Cartwright told prisoners that the reason they were not getting commissary privileges or going to chow was because of Moore. She tried to get the prisoners to assault Moore to justify her retaliatory acts against him. Cartwright said that one way or another Moore would suffer consequences for filing lawsuits and grievances.

On June 19, 2008, Cartwright tried to get two black inmates to attack Moore because he had filed grievances against her and filed this lawsuit. Cartwright came to A-Block where Moore lived and tried to get the black prisoners to attack Moore by telling them to "whip that punk." She did this in an attempt to lock up Moore.

Cartwright and Terrell unit officials retaliated, harassed, verbally abused, and discriminated

2

against Moore, including using racial slurs. Moore told Jones, Moya, and Livingston about Cartwright's harassment and retaliation. They did not, however, take any action against Cartwright. Collins, Rafter, Spivey, and Waldron have harassed and retaliated against Moore because of his complaints about them and Cartwright concerning their participation in the smuggling of tobacco, marijuana, and other contraband to black gang members into the Terrell Unit. Moore says that these incidents were eventually handled by prison officials. They fired Cartwright on June 30, 2008.

Moore was diagnosed as having "heart disease, including a weak ... left ventricle artery, and irregular heart beat." In July, 2005, Moore suffered a severe heart attack or stroke while held in the Powledge Unit in Palestine, Texas. The second hand smoke he now breathes resulting from the tobacco or marijuana smoke inside the Terrell Unit has damaged his lungs, affected his breathing, and contributed to his heart disease. Terrell Unit officers continued to fail or refuse to stop illegal activities by the black corrupt officers and the black gang members inside the Terrell Unit.

In his definite statement concerning his claim of denial of access to the courts, Moore states that the harassment and retaliation by Collins, Rafter, Spivey, Rivers, Rivas, Waldron, and Cartwright was the direct result of Moore's written complaints against prison employees. Moore had complained about their participation in the illegal smuggling of tobacco and other contraband into the Terrell Unit to black gang members, which continued to the time Moore filed his complaint. The defendants conspired to violate Moore's right to seek redress in the courts. Livingston and Moya knew of this denial of access to the courts and the harassment and retaliation against Moore. Collins, Rafter, Spivy, Rivers, Waldron, Moya, Jones, and Livingston influenced officers to permit the filing of false and fabricated disciplinary offense reports against Moore.

The second-hand smoke that Moore breathes affects his breathing, causes headaches, damages his lungs, and worsens his heart disease. Livingston condoned the smuggling of tobacco when he testified before the State Senate Criminal Justice Subcommittee. Moore's last claim is that TDCJ Disciplinary Code offense 24.0 (refusing or failing to obey orders) is unconstitutional and should be abolished.

2. *The Spears Hearing*

Moore testified as follows at the *Spears* Hearing. The Court asked Moore why he believed Cartwright had gotten two inmates to come after him. Moore responded that it was because he had filed numerous step one and step two grievances against her seeking redress "behind the retaliation

and harassment and the racial slandering." He said this was continuous; that every time he filed a grievance, he suffered retaliation. He added that Cartwright tried to get some of her snitches to harass and roust Moore to stop him from seeking further redress.

The Court asked Moore how he knew that Cartwright's actions were based on retaliation and if he was claiming that every time Moore filed a grievance against her, the other inmates started something against him. Moore responded that this did not initially happen, but after his fourth grievance, inmates started coming after him. Moore went on to say that when he finally stated a claim against her in a grievance, the sergeant "got on her about it." After that, she "told the entire day room that the reason she stopped them from going to chow, made everybody cell down [sic] and made them rack up, and told them that the reason why they weren't going to chow, even if they got to go that day, and that they were absolutely going to go last, it was because of me, and pointed me out in front of the day room to everybody in there...."

The Court next asked Moore how he knew that the actions of Collins, Rafter, Spivey, and Waldron were based on retaliation. Moore responded that prison officials replied with standardized responses to his grievances. Officials wrongly stated that his allegations were insubstantial and lacked merit. Despite having every opportunity, because Moore grieved everything that happened to him, the officials did not take any corrective action. Officials often responded that they were investigating further or the investigation was insufficient. Moore says nothing was ever revealed and nothing was ever done.

A prison official testified that in 1995 smoking was banned at all Texas prison units. He also said there were no reports of smuggling tobacco or marijuana into the Terrell Unit during the time period Moore alleges there was smuggling.

3. *Supervisors*

Moore claims that prison officials condoned and allowed their subordinates to take actions against him. In the great majority of his claims, Moore alleges that the higher ranking Defendants allowed, condoned, or failed to correct through the grievance process, the actions of Cartwright and other underlings.

Moore seeks punitive damages and preliminary injunctive relief. (13, p. 8). Moore's claim for damages will not lie against any prison employees in their official capacity. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1988). A plaintiff suing a defendant in his individual

capacity must show that the defendant personally participated in the alleged deprivation or that there was a causal connection between his actions and the constitutional violation. *Barksdale v. King*, 699 F.2d 744, 746 (5th Cir. 1983). A supervisor can only be liable for a section 1983 violation if he is personally involved in the constitutional deprivation or if his wrongful conduct caused the violation. *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987). Vicarious liability or respondeat superior does not apply in civil rights cases. *Id.* Moore's claims, based on conclusory allegations that supervisors denied grievances and allowed or condoned actions by Cartwright and Spivey, also fail.

Moore's conspiracy claims fail because he does not allege facts showing that the defendants agreed to commit an illegal act. *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir 1982). All of Moore's claims are based on (1) a conspiracy among the defendants, (2) allegations that supervisors denied grievances, or (3) allegations that supervisors allowed or condoned actions by Cartwright or Spivey, with two exceptions. These exceptions are Moore's claims that prison officials retaliated, harassed, and discriminated against him and his claims against Cartwright and Spivey.

Beyond his claims based on a conspiracy or improper supervision, Moore claims that Terrell unit officials retaliated, harassed, verbally abused, and discriminated against him. These conclusory claims do not state a claim for relief. *Davidson v. Georgia*, 622 F.2d 895, 897 (5th Cir. 1980) (conclusory allegations unsupported by any facts are insufficient to state a claim). Moore also claims, beyond his conspiracy and improper supervision allegations, that Collins, Rafter, Spivey, and Waldron harassed and retaliated against him because of his complaints against them and against Cartwright for their participation in the smuggling of tobacco, marijuana, and other contraband to gang members on the Terrell Unit. These claims are also conclusory. Furthermore, Moore admits that these incidents were eventually handled by prison officials.

4. *Harassment, Slander, and Discrimination*

The eighth amendment "protects prisoners against calculated harassment unrelated to prison needs." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984). Moore has not made specific allegations showing that prison supervisors or guards harassed him except as to Cartwright. Defamation is not recoverable under the Civil Rights Act because defamation does not involve the deprivation of a constitutional right. *Cook v. Houston Post*, 616 F.2d 791, 794 (5th Cir. 1980). Moore has no constitutional right to be free from slander or verbal abuse. *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002). Moore has not shown a constitutional violation under his claims of slander.

Moore also claims discrimination. To show a constitutional violation, he has to "prove purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Muhammad v. Lynaugh*, 966 F.2d 901, 903 (5th Cir. 1992). Moore's allegations do not show purposeful discrimination. *See Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995). Moore does not show purposeful discrimination or a discriminatory effect.

5. *Retaliation*

A plaintiff claiming retaliation must allege facts showing that a defendant subjected him to harassment and that this was done in retaliation for lawsuits or grievances. *Whittington v. Lynaugh*, 842 F.2d 818 (5th Cir. 1988). The plaintiff must submit facts showing a retaliatory motive or the alleged conduct must itself raise an inference of retaliation in order to support a § 1983 claim. *Id.*, 842 F.2d at 819. Conclusory allegations of retaliation are insufficient. The inmate must either show direct evidence of motivation, or allege a chronology of events from which retaliation may plausibly be inferred. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). Moore must show "that but for the retaliatory motive the complained of incident ... would not have occurred." *Id.*

At the *Spears* hearing, he testified that prison officials had retaliated against him based on the fact that the adverse actions occurred after he filed his grievances. He also said that he knew officials were retaliating against him because they gave him standard responses and they did not take any corrective action. The fact that one event follows another in time does not amount to proof of retaliation. *Enlow v. Tishomingo County, Mississippi*, 45 F.3d 885, 889 (5th Cir. 1995). Moore testified that Cartwright told a group of prisoners that they were not going to chow because of Moore's actions. He does not raise a claim of retaliation against any Defendants except Cartwright.

6. *Access to the Courts and the Prison Disciplinary Code*

To support a claim of denial of access to the courts, a prisoner must show that his position in a legal action was prejudiced. *Lewis v. Casey*, 518 U.S. 343, 349 (1996). Moore does not explain what the Defendants did that prevented him from filing papers in a court or show that he suffered any prejudice in any lawsuit. Moore has not shown a denial of access to the courts. Punishing prisoners for refusing or failing to obey orders is constitutional. Moore's final claim, that the disciplinary offense of failing to obey an order is unconstitutional, fails.

7. *Cartwright*

Moore makes allegations against Cartwright which raise claims of civil rights violations,

6

including harassment and retaliation. Cartwright has not been served process. A plaintiff proceeding as a pauper is entitled to have the U.S. Marshal serve process after he provides the necessary information on the defendants. FED. R. CIV. P. 4(c)(2); *Rochon v. Dawson*, 828 F.2d 1107, 1110 (5th Cir. 1987). That, however, does not mean that Moore is entitled to have a marshal investigate and locate the unserved defendants. *Id.* An incarcerated *pro se* plaintiff should "provide the necessary information to help effectuate service." *Puett v. Blandford*, 912 F.2d 270, 275 (9th Cir. 1990) (*citing Rochon*). An inmate proceeding as a pauper may rely on the Marshals Service to serve process, but must furnish information needed to serve process on the defendant. *Antonelli v. Sheahan*, 81 F.3d 1422, 1426 (7th Cir. 1996).

Under due process, a federal court must have personal jurisdiction over a defendant before it can grant relief to a plaintiff against the defendant. *J. O. Alvarez, Inc. v. Rainbow Textiles, Inc.*, 168 F.R.D. 201, 203 (S.D.Tex.1996) ("A district court cannot exercise [personal] jurisdiction over a defendant which has not been served properly."). Although ordered to do so, Moore has not provided the address or any information on the location of Cartwright. The record does not show any basis on which to avoid a dismissal of the claims against Cartwright for lack of service of process on her. This court does not have personal jurisdiction over Cartwright.

8. *Conclusion*

Moore's claims against all Defendants, except Cartwright, fail because the claims are improperly based on the Defendants' supervisory capacity or a conspiracy, the claims are conclusory, or the claims do not state a claim recognized at law. Furthermore, Moore has not shown he is entitled to the relief he seeks—punitive damages and an injunction. The claims against Cartwright are dismissed without prejudice for want of personal jurisdiction. This case is dismissed. 28 U.S.C. § 1915(e)(2)(B)(ii). The clerk will send a copy to the District Clerk for the Eastern District of Texas, Tyler Division, 211 West Ferguson, Tyler, Texas 75702, Three Strikes List.

Signed December 2, 2010, at Houston, Texas.

Lynn N. Hughes
United States District Judge